IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

EMOGENE HELMICK,

           Plaintiff,

v.                                       CIVIL ACTION NO. 2:07-cv-00743

COLUMBIA GAS TRANSMISSION,

           Defendant.

**MEMORANDUM OPINION AND FINAL ORDER APPROVING SETTLEMENT AND CERTIFYING THE SETTLEMENT CLASS**

This litigation arises from allegations that the defendant, Columbia Gas Transmission's ("Columbia") T16 pipeline contaminated the property of several residents of Calhoun, Gilmer, and Roane Counties, West Virginia. Emogene Helmick, as class representative, alleged that the leak caused diminution of property value, public and private nuisance, and past and continuing trespass to the residents' properties.

Columbia and Helmick have reached an agreement to resolve the claims of Helmick and the class she represents (collectively, "Settlement Class" or "Class Members"). As such, the following motions are pending before the court: motion for appointment of joint escrow agents and approval of federally chartered institution, motion for approval of claim form, motion for attorneys' fees, and motion for final approval of class action settlement.

Having considered the entire record of submissions in this matter and the oral presentations at the final fairness hearing, I **FIND** that the Settlement Class satisfies the requirements of Federal Rules of Civil Procedures 23(a) and 23(b)(3). Moreover, I **FIND** that the settlement is fair,

reasonable, and adequate. Accordingly, the motion for final approval of the class action settlement [Docket 60] is **GRANTED**. The motion for appointment of joint escrow agents and approval of federally chartered institution [Docket 59], motion for approval of claim form [Docket 69], and motion for attorneys' fees and reimbursement of expenses [Docket 71] are also **GRANTED**.

**I.      Background**

     **A.      The Complaint**

On October 17, 2007, Helmick filed a class action complaint in state court alleging that Columbia caused diminution in value to property, public and private nuisance, and past and continuing trespass. Specifically, Helmick alleges that Columbia's T-16 pipeline, which runs through her property and the property of the Class Members, contained liquid condensate that contained benzene and xylene, known carcinogens. Due to Columbia's practice of removal of this condensate, these substances leaked into the soil of Helmick's and Class Members' properties, contaminating it.[1]

The T-16 pipeline has since been abandoned by Columbia, but Columbia has attempted to transfer ownership of the pipeline. In order to do so, Columbia asked Helmick and other Class Members to sign an "Ownership Transfer of Abandoned Pipeline" contract. The complaint alleges that, pursuant to the contract, Helmick would make certain warranties if she would remove equipment or other material from her property, and would indemnify and hold harmless Columbia

---

[1] In evaluating the nature and strength of the class claims, Columbia has denied the existence of contamination along T-16 pipeline, and the court does not conclude that there has been such contamination. The pipeline has not been in use since September 9, 2004, and there are currently no active leaks in the pipeline. Any existing contamination, therefore, would have occurred before this date.

for any liability arising out of such removal. Many Class Members, the complaint alleges, were coerced into signing these contracts.

### B. Procedural History

After Helmick filed this class action in state court, Columbia removed it to federal court on November 19, 2007 [Docket 1]. Helmick filed a motion to remand on December 17, 2007 [Docket 6]. The court designated this case as a complex case on February 11, 2008 [Docket 19]. Helmick subsequently filed a motion to withdraw her motion to remand [Docket 36], and the court granted the motion on September 22, 2008 [Docket 37].

Magistrate Judge Mary E. Stanley held a mediation conference on October 16, 2008, and the parties indicated that they would settle the case. This court consequently closed the case. However, the parties failed to submit a settlement agreement, and Judge Stanley held a conference on April 1, 2009, during which time the parties presented and filed a proposed settlement agreement (the "Settlement Agreement") [Docket 43]. The parties then filed a joint motion for conditional certification of temporary settlement class and preliminary approval of settlement on May 4, 2009 [Docket 46], and the case was reopened by this court's order on May 5, 2009 [Docket 48].

The court granted the parties' joint motion for conditional certification of the temporary settlement class and preliminary approval of the class action settlement on July 22, 2009 [Docket 53]. At that time, the parties represented that the class contained approximately 113 members. The court then granted a motion appointing the Bell Law Firm as claims administrator [Docket 55]. The court twice extended the deadline for filing by the claims administrator of the benefit notice and claim forms, with a final deadline of November 6, 2009 [Docket 58]. The notices and claim forms were mailed on November 5, 2009.

In preparation for the formal fairness hearing, the parties then filed a motion for appointment joint escrow agents and a federally chartered financial institution, as well as a motion for final approval of class action settlement on February 3, 2010 [Dockets 59, 60].

No objections, opt-outs, or requests for appearance were filed by the Class Members. After several continuances due to weather and other circumstances, the court held a formal fairness hearing on May 3, 2010. The parties presented evidence and argument as to the fairness of the settlement terms and the adequacy of notice to the class members. Helmick was present, but no other Class Members attended the hearing. As suggested by the court at the hearing, the parties also filed a joint motion for approval of a revised claim form [Docket 69] on May 6, 2010.

## II. Summary of the Final Settlement Agreement

I adopt the terms of the Settlement Agreement [Docket 43] as the Final Settlement Agreement (hereinafter, the "Agreement"), except as modified below.

### A. Settlement Fund and Administration Expenses

The Agreement provides that Columbia will fund a qualified settlement fund (the "Settlement Fund") with up to, but no more than, $450,000. The parties have agreed that the deposit amount shall be $425,452.77, which takes into account those Class Members who have not yet responded to the Benefit Notice. This amount is based on an estimated 134 Subject Parcels[2] of land over 47,272.53 yards of pipeline, as depicted on the Line, Parcel Mapping & Data Set for Columbia Gas Transmission Line T-16, prepared by Oakpointe Management, d/b/a WVLandResources. (*See* Exhibit 1 [Docket 68]). This amount reflects a payment of $9 per yard, which is the maximum gross

---

[2] As defined in Section I.40 of the Settlement Agreement, "Subject Parcels" are "parcels of land in West Virginia owned by Class Members on the T16 pipeline where the T16 pipeline remains in place and the landowner has not previously executed a release."

settlement payment on a per yard basis that a Class Member may claim under the Settlement Agreement.[3]  Columbia shall make its contribution to the Settlement Fund within thirty (30) days of this Order.

In addition to the Settlement Fund, Columbia is responsible for payment of administration expenses, up to $35,000 total, which will be subject to court approval.  If the administration expenses exceed $35,000, then excess expenses shall be assessed as costs of litigation and deducted from the Settlement Fund, subject to court approval.  Class Members are responsible for attorneys' fees and expenses incurred individually in connection with their claims submissions and resolution.[4]

### B. Class Representative Incentive Award

The Settlement Agreement provides that Helmick shall receive an incentive award of $50,000.00 in her capacity as class representative.  Incentive awards are routinely approved in class actions to "encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 767 (S.D. W. Va. 2009).  For example, in *In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369, 400 (D.D.C. 2002), the court approved $25,000 to each of three class representatives.  Those representatives "provided in-house counsel, fraud

---

[3]The parties explain that the smallest length of pipeline across a Subject Parcel is 2.83 yards, which will yield a maximum award of $25.47.  The greatest length of pipeline is 1414.08 yards, which will yield a maximum award of $12,726.72.  The average award to the Class Members, based on the average length of pipeline (352.78 yards) will be $3,175.02.

[4]All calculations concerning yards of pipeline are based on the Line, Parcel Mapping & Data set submitted by the parties.

investigators, and pharmacy benefits managers to aid in the prosecution of this case, whose efforts included investigating, negotiating, responding to discovery demands, attending meetings, coordinating with other in-house counsel, and directing class counsel in settling the case." *Id.*

In this case, according to the parties, Helmick regularly cooperated with experts, participated in mediation, provided valuable background information, participated in discovery, and engaged in frequent travel to Kanawha County from her home in Roane County, West Virginia. The record shows that, for the damage to her property, Helmick would be entitled to receive over $12,000 from the Settlement Fund, in addition to her incentive award, which does not come from the Settlement Fund. Because of the damage to her property and her involvement with this matter, the court approves the $50,000 incentive award to Helmick.

In addition, as set forth more fully in the Settlement Agreement, pages 6-7, the parties agree to the following terms regarding Helmick:

- Columbia shall stay within the right-of-way and ingress and egress over the old logging road on Helmick's property except to the extent that it may otherwise obtain prior approval from Helmick. There is an exception for emergencies.

- Columbia shall put down grass seed and straw on the short part of the old logging road on Helmick's property, in lieu of grading. It shall further use drain pipe to repair wash outs on the old logging road on Helmick's property to a condition that in its discretion makes Columbia's use of that road for ingress and egress to the T-Loop pipeline on Helmick's property safe and practicable.

- Columbia shall repair the leak in the T-Loop on Helmick's property at an agreed time.

- Columbia shall notify Helmick in writing by certified mail in advance of any scheduled inspection, maintenance, or repair work performed on her property, except in the case of an emergency. In addition, any obligation to provide advanced notice will terminate with any transfer of Helmick's property interest.

- Columbia shall indemnify and hold Helmick harmless for any claims made against her by Columbia employees and/or contractors for injuries to such employees while working on Helmick's property.

- Helmick shall indemnify and hold Columbia harmless for any claims made against it by anyone other than Columbia employees and/or contractors for injuries sustained on the old logging road not arising from Columbia's sole negligence.

- Helmick shall give Columbia a complete release of all claims relating to the T16 pipeline, and a release of all claims relating to the T-Loop through the date of this Memorandum Opinion and Order.

- Helmick agrees that the T16 pipeline shall remain in place on her property.

**C.     Attorneys' Fees**

Class Counsel has filed a motion for attorneys' fees and expenses with the court [Docket 71]. They request $141,817.59 in fees and $25,394.95 in expenses,[5] for a total of $167,212.54, to be paid from the Settlement Fund pursuant to the Settlement Agreement. They have also requested fees in the amount of $16,666.67 to be deducted from the $50,000 Helmick incentive award. Thus, should the court award fees and expenses, the Settlement Fund will contain $258,240.23 to be divided among the approximately 134 Subject Parcels in accordance with the Settlement Agreement.

When a class settlement results in the creation of a common fund for the benefit of class members, as it does here, "reasonable attorneys' fees [may be awarded] from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Class Counsel argues for the "percentage fund method" of fee calculation, as opposed to the "lodestar method." In *Jones*, I announced my

---

[5]The expenses are broken down as such: $13,610.57 to Fisher, Boyd, Boudreaux & Huguenard; and $11,784.38 to The Bell Law Firm.

-7-

preference for the percentage method, coupled with the lodestar cross-check. 601 F. Supp. 2d at 760. I explained,

> The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases. *See Muhammad v. Nat'l City Mortgage, Inc.*, Civil Action No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534 , 2008 WL 5377783, at *7 (S.D. W. Va. Dec. 19, 2008) (Copenhaver, J.); *see also Strang et al. v. JHM Mortgage Sec. Ltd. P'ship et al.*, 890 F. Supp. 499, 502 (E.D. Va. 1995); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 187; *Third Circuit Task Force Report, Selection of Class Counsel*, 208 F.R.D. 340, 355 (January 15, 2002) ("A percentage fee, tailored to the realities of a particular case, remains superior to any other means of determining a reasonable fee for class counsel.").
>
> . . .
>
> Courts incorporate the lodestar method into the percentage method in two ways. First, as discussed above, courts often apply lodestar factors when assessing the reasonableness of attorneys' fees under the percentage method. *See In re Microstrategy,* [*Inc. Sec. Litig*.], 172 F. Supp. 2d [778], 786-87 [(E.D. Va. 2001)] (explaining that courts using the percentage method "reference the same case-specific factors many courts use to adjust, or determine a multiplier for, a lodestar figure."). Many courts have also incorporated a "lodestar cross-check" into their review of a percentage-based attorneys' fee. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 191; *In re Royal Ahold N.V. Securities & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006); *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Enron Corp. Sec., Derivative & ERISA Litig*., 586 F. Supp. 2d 732, 778 (S.D. Tex. 2008); *In re Cardinal Health*, 528 F. Supp. 2d at 764; *Smith v. Krispy Kreme Doughnut Corp*., No. 1:05-CV-00187, 2007 U.S. Dist. LEXIS 2392, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007). By using the percentage of fund method and supplementing it with the lodestar cross-check, a court can take advantage of the benefits of both methods. *See In re Microstrategy*, 172 F. Supp. 2d at 787.

*Jones*, 601 F. Supp. 2d at 758-60. In light of the above principles, and those more fully explained in *Jones*, this is an appropriate case for the use of the percentage fund method with the lodestar cross-check.

       *1.*    *Reasonableness Determination*

Before approving the attorneys' fees, however, I must first engage in a reasonableness determination. *See Jones*, 601 F. Supp. 2d at 760. To do so, I have considered the following factors: (1) the results obtained for the class, (2) the quality, skill, and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy. *See id.* (citing *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 733 (3d Cir. 2001); *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). *See also Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting similar factors for consideration under the lodestar method). I **FIND** that the following factors all weigh in favor of the reasonableness of the requested fee award: the significant benefit obtained for the class; the quality, skill and efficiency of Class Counsel; the proximity of the requested award to awards in similar cases; the absence of objections to the award. I **FIND** that the following factors weigh against the reasonableness of the requested fee award and in favor of a reduced fee award: the non-complex nature of the case, and the low risk of non-payment. I also take into account the public policy considerations of this award. Balancing all of these factors, I **FIND** that a fee award in the amount of 33 1/3 % (one-third) of the Settlement Fund is a reasonable fee for Class Counsels' work in this case.

First, the result obtained for the Class Members weighs in favor of the requested fee award. Counsel have worked for over two and a half years to obtain benefits for those whose property may have experienced diminution in value due to the T16 pipeline. In addition, there were no objections from any Class Members to the terms of the Settlement Agreement, which suggests that "the class members are pleased with the settlement result." *Jones*, 601 F. Supp. 2d at 761. Second, Class Counsel are experienced and skilled in class action litigation, as evidenced by their work in this case

and affidavits from other attorneys submitted as exhibits to the joint motion for approval [Docket 70-1, 2]. They were also efficient. They moved the case along diligently, despite delays out of their control, and thoroughly advocated on behalf of the Class Members.

Third, the complexity and duration of the case weigh slightly against a reasonable award of fees. The complaint was filed November 19, 2007, and negotiations were ongoing for two and a half years. This is not, however, a long period of time for a class action settlement to be contemplated and executed. In addition, courts may look to whether negotiations were "hard fought," "complex," or "arduous." *Id.* at 762 (citing *In re Merrill Lynch*, 249 F.R.D. at 138). Here, there is no such evidence. Fourth, in addition, there is no evidence that "Class Counsel undertook greater risk [of non-payment] in this case than in any other typical class action." *Id.*

Fifth, I note that 33 1/3% is slightly higher than awards given in similar class actions, but I must keep in mind that "a district court may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." *Id.* at 763 (quoting *In re Cendant*, 243 F.3d at 736). I find that awarding Class Counsel one-third of the Settlement Fund and incentive award is appropriate considering the work performed on this case. This factor thus weighs slightly in favor of the fee award. Sixth, as in *Jones*, here there was a "high success of the class notification" and no objections from Class Members. *Id.* In fact, 94.7% of all Class Members received direct, individual notification of the class action suit. This is a "remarkably high success rate, especially compared to class actions in which class members are unknown, direct notice is impossible, and notice is instead provided through public outlets." *Id.* This weighs heavily in favor of the fee award.

Finally, as to public policy concerns, I reassert my thoughts and concerns about attorneys' fees as set forth in *Jones*. Perceptions that attorneys' fees are too high "strike at the very core of the ethics of the legal profession, specifically, the lawyer's ethical duty to safeguard the legal system." *Id*. at 764. Competing with this perception, however, "is the policy encouraging counsel to accept worthy engagements." *Id*. at 765 (internal quotation marks omitted).

> At the heart of the class action lies the belief "that the interests of justice are well served by class actions that vindicate rights that might otherwise go unprotected and that spare courts the burden of handling numerous lawsuits, some small and some not so small, arising from a common set of facts." *Third Circuit Task Force Report*, 208 F.R.D. at 342. Therefore, public policy generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves but also will not create an incentive to bring unmeritorious actions. *See In re Merrill Lynch* [*Tyco Research Sec. Litig.*], 249 F.R.D [124,] 142 [(S.D.N.Y. 2008)]; *In re Microstrategy*, 172 F. Supp. 2d at 789 n.36. Attorneys' fees must be sufficient "to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class . . . ." *In re Microstrategy*, 172 F. Supp. 2d at 788.

*Id*. I take into account concerns on both sides of this argument as I decide whether the attorneys' fee award is reasonable.

### 2. *Lodestar Cross-Check*

Where a court uses the lodestar cross-check method, the hours documented by counsel "need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger*, 209 F.3d at 50. Class Counsel submits that it has expended an estimated 510.48 total hours on this matter. The Bell Law Firm expended 417.15 hours. Harry F. Bell, senior attorney for The Bell Law Firm, bills $325 per hour for such work, which is reasonable for an attorney of Mr. Bell's experience and expertise. (*See* Dockets 70-1, 2.) Other attorneys and staff working on the case billed $60 to $275. (*Id*.) Under a lodestar analysis, therefore, the value of the work of The Bell Law Firm was $90,823.75. (*Id*. p. 11.)

The firm of Fisher, Brown, Boudreaux & Hugenard, LLP expended 93.33 hours of work. Larry P. Boyd, lead counsel on this matter, bills at $750 per hour. This would yield a value of around $70,000. (*See* Docket 70-4.) Using the lodestar method, Class Counsel would receive $160,823.75, as opposed to the percentage fund method award, which is $141,817.59. The lodestar multiplier, then, is 1.13. I should not "plac[e] too much weight on these numbers" and allow the calculations to "supplant the court's detailed inquiry into the attorneys' skill and efficiency in recovering the settlement." *Jones*, 601 F. Supp. 2d at 766 (internal quotation marks omitted). The numbers show, however, that the fee request is reasonable even under the lodestar method.

### 3. Conclusion: Attorneys' Fees

For these reasons, I **GRANT** Class Counsels' joint motion for award of attorneys' fees and reimbursement of expenses [Docket 71]. Class Counsel shall receive $141,817.59 in fees, $25,394.95 in expenses, both taken from the Settlement Fund, and $16,666.67 from Helmick's individual incentive fee. Thus, Class Counsels' total fees and expenses total $183,879.21. The Settlement Fund will contain $258,240.23 to be divided among the approximately 134 Subject Parcels in accordance with the Settlement Agreement.

## III. Personal Jurisdiction and Notice

In the context of a class action, the due process requirements of the Fifth Amendment require "[r]easonable notice combined with an opportunity to be heard and withdraw from the class." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. 221, 231 (S.D. W. Va. 2005). Federal Rule of Civil Procedure 23 also requires that a class receive notice prior to settlement. Rule 23(c) specifically provides that for a class maintained under Rule 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The rule further provides that the notice inform potential class members of the nature of the action, that class members may make an appearance through counsel, that class members may exclude themselves from the settlement, and that the class judgment will have a binding effect on class members who are not excluded. *Id.* "'[S]ilence on the part of those receiving [such] notice is construed as tacit consent to the court's jurisdiction.'" *In re Serzone*, 231 F.R.D. at 231 (internal quotation marks omitted).

The notice plan was implemented by the Bell Law Firm, which was approved by this court to serve as the Claims Administrator. The plan included a mailing to all reasonably identifiable Class Members, and the establishment of an informational website and toll-free telephone support number. The court found that this was "the best notice practicable under the circumstances" and concluded that the proposed notice forms and plan of dissemination met the requirements of Federal Rule of Civil Procedure 23. (July 22, 2009 Order [Docket 53] at 6.) The court also found it unnecessary for the claims administrator to implement a paid media notice program.

Notice was effective in this action because the Bell Law Firm was able to provide individual notice by mail to most Class Members. Indeed, over 94% of the total class was notified by direct mail. The parties report that by February 3, 2010, the toll-free telephone support number had received five calls, but the informational website had received over 1400 hits and over 350 visits or sessions. Moreover, no notified Class Members have objected to the settlement on the basis of lack of reasonable notice and opportunity to be heard or to opt out, after having ample time (forty-five days from the date of the mailing to the exclusion and objection deadline) to do so.

I therefore **CONCLUDE** that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out.

## IV.  CAFA Requirements

The Class Action Fairness Act of 2005 ("CAFA") requires each defendant participating in a proposed class settlement to provide appropriate state officials with information about the settlement, including, *inter alia*, a copy of the complaint, notice of any judicial hearings, any notification to class members, and any final judgments on the settlement. 28 U.S.C. § 1715(b).

The parties' joint motion [Docket 61] and exhibit filed with the court [Docket 50] show that the CAFA requirements have been met in this case. The parties filed a notice of the proposed settlement upon the United States Attorney General and the attorneys general from eleven states in which Class Members may be found. The notice included the class action complaint, settlement agreement, draft notice of class settlement, list of class members by state of residence, and the court's May 5, 2009 order reopening the case. Therefore, the Court **FINDS** that compliance with CAFA is satisfied.

## V.  Class Certification

A settlement class must meet the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b). *In re Serzone*, 231 F.R.D. at 237. The Fourth Circuit reads Rule 23 liberally and applies it flexibly to "'best serve the ends of justice for affected parties and promote judicial efficiencies.'" *Id.* (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003)). In this case, the parties seek class certification under Rule 23(b)(3).

In my July 22, 2009 order, I analyzed the proposed settlement class (the "Settlement Class") pursuant to Rules 23(a) and 23(b)(3) and found that the requirements of those rules – numerosity, commonality, typicality, adequate representation, predominance of common issues, and superiority of the class action mechanism – had been met. Nothing added to the record since that time alters my findings. In addition, no Class Members have objected to the certification of a settlement class as preliminarily and conditionally certified in the July 22, 2009 order. Finally, the high success rate of the class notification supports class treatment in this case because there is little risk that Class Members' interests were inadequately represented or were unprotected. Consequently, for the reasons set forth in the previous order, and those discussed above, I **CERTIFY** the Settlement Class.

## VI.     Fairness Determination

Federal Rule of Civil Procedure 23(e)(2) provides that a court may only approve the binding settlement of a certified class action after determining that the proposed settlement is fair, reasonable, and adequate. While compromise and settlement are favored by the law, "[t]he primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). In *In re MicroStrategy*, the court noted that "approval of a class action settlement is committed to 'the sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances.'" 148 F. Supp. 2d at 663 (quoting *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986)).

I must apply the specific analysis adopted by the Fourth Circuit for determining whether the settlement satisfies the Rule 23 requirements. The Fourth Circuit has adopted a bifurcated analysis, separating the inquiry into a settlement's "fairness" from the inquiry into a settlement's "adequacy."

*In re MicroStrategy*, 148 F. Supp. 2d at 663 (citing *In re Jiffy Lube Sec. Litig*, 927 F.2d at 158-89); *see also Strang*, 890 F. Supp. at 501.

### A. Fairness

In assessing the "fairness" of a proposed settlement, the court must consider the following four factors: "'(1) the posture of the case at the time the settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation.'" *In re MicroStrategy*, 148 F. Supp. 2d at 663-64 (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.3d at 159); *see also Strang*, 890 F. Supp. at 501.

The court **CONCLUDES** that the fairness requirement is met in this case. Settlement was proposed after a reasonable but thorough period of discovery, in which Helmick actively participated. The Agreement has been negotiated over a period of months at arm's length between counsel. Magistrate Judge Stanley assisted the parties in reaching an agreement by serving as mediator for the negotiations. Furthermore, Helmick's counsel has experience with class action and other complex litigation. In the Declaration of Lead Counsel [Docket 46-3], Helmick's attorneys list over ten complex litigation suits with which they have been involved in the past ten years.

### B. Adequacy

In determining the "adequacy" of the settlement, the court looks to the following:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*In re MicroStrategy*, 148 F. Supp. 2d at 665 (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.3d at 159); *see also Strang*, 890 F. Supp. at 501.

The court **CONCLUDES** that the adequacy requirement is also met. Although Helmick believes she has strong claims against Columbia, there is obviously no certainty that she will prevail if the settlement is not approved and the litigation continues. Moreover, Columbia has denied liability and will continue to challenge Helmick's claims if the case should move forward. The issues in this action involving contamination from an underground pipeline are complex. Complex litigation such as this would be very costly to maintain, as the parties represent that they expect to take many additional lengthy depositions and engage in the continued production and review of documents. Further, maintenance of this action, according to the parties, would require extensive review by experts who would be costly to both sides.

There is no issue of the solvency of Columbia, and the Agreement establishes a Settlement Fund that will adequate to make settlement payments and pay fee awards as well.

In addition, there is no evidence of collusion, and the court may presume that the parties conducted settlement negotiations in good faith and without collusion in absence of evidence to the contrary. *See Muhammad*, 2008 WL 5377783 at *4.

**VII.    Objections**

There were no objections to the Settlement Agreement by Class Members.

**VIII.   Miscellaneous Items**

    **A.    Bar Date**

The parties also request that the court set a "Bar Date" of forty-five (45) days following the mailing of the benefit notices and claim forms. Section V.B of the Agreement provides that the court will be asked to set a Bar Date, by which Class Members will return a completed claim form to the claims administrator. The court **GRANTS** this request. Class Members will hereby have

forty-five days (45) from the mailing of the benefit notices and claim forms to fill out the forms and return them to the claims administrator.

### B.     Claims Form

The parties have submitted a renewed joint motion for approval of a revised claims form [Docket 69]. The new claims form has deleted a provision giving Columbia a contractual right of indemnification. The court **GRANTS** the motion, and to the extent the Agreement provides that Columbia has this right of indemnification, those provisions are null and void.

### C.     Notice to Remaining Class Members

Although the claims administrator provided notice to over 94.7% of the potential Class Members, this action involves a uniquely small class. As discussed at the formal fairness hearing, the court **ORDERS** the claims administrator to utilize its best efforts to notify the remaining 5.3% of the Class Members. The court is optimistic that more Class Members can be reached, especially in light of the Bell Law Firm's recent assurance that it will retain the services of a landman or private investigator.

## IX.    Conclusion

For the reasons discussed above, the Joint Motion for Final Approval of Class Action Settlement is **GRANTED** [Docket 60]. Accordingly, the court **CERTIFIES** the proposed class upon finding that the class satisfies Rule 23(a) and Rule 23(b)(3) and **APPROVES** the Final Settlement Agreement upon finding that the settlement is fair, reasonable, and adequate for the purposes of Rule 23(e). The motion for appointment of joint escrow agents and approval of federally chartered institution [Docket 59], motion for approval of claim form [Docket 69], and motion for attorneys' fees and reimbursement of expenses [Docket 71] are also **GRANTED**.

The claim forms are to be mailed to the Class Members within **twenty-five (25) days** of entry of this court's Memorandum Opinion and Final Order Approving Settlement and Certifying the Settlement Class.  Class Members shall then have **forty-five (45)** days to respond.  The claims administrator will also utilize its best efforts to contact the potential Class Members who did not receive notice.  It is further **ORDERED** that the Class Members' claims are hereby released.

The court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented party.

        ENTER:       July 1, 2010

*Joseph R. Goodwin*
Joseph R. Goodwin, Chief Judge